Richard L. KALNIT, Plaintiff,

v.

Frank M. EICHLER, Robert L. Crandall, Charles P. Russ III, Pierson M. Grieve, Louis A. Simpson, Allan D. Gilmour, Charles M. Lillis, Grant A. Dove, John Slevin, Kathleen A. Cote, Daniel W. Yohannes, and Mediaone Group, Inc., Defendants.

No. 99 Civ. 3306(SAS).

United States District Court, S.D. New York.

Dec. 22, 1999.

Stephen J. Fearon, Jr., James Jay Seirmarco, Abbey, Gardy & Squitieri, LLP, New York, NY, for plaintiff.

Dennis J. Block, James M. Halper, Cadwalader, Wickersham & Taft, New York, NY, for defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Richard L. Kalnit, on behalf of himself and all others similarly situated, brings this uncertified securities fraud class action against MediaOne Group, Inc. ("MediaOne") and its directors, Frank M. Eichler, Robert L. Crandall, Charles P. Russ III, Pierson M. Grieve, Louis A. Simpson, Allan D. Gilmour, Charles M. Lillis, Grant A. Dove, John Slevin, Kathleen A. Cote and Daniel W. Yohannes (collectively the "Directors" or "individual defendants"). Plaintiff alleges that defendants violated Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, by fraudulently failing to disclose certain information in connection with a publicly announced, proposed merger between MediaOne and Comcast Corporation ("Comcast"). Plaintiff brings an additional claim against the individual defendants for controlling person liability pursuant to Section 20 of the Exchange Act. Plaintiff seeks damages for losses incurred as a result of defendants' alleged violations.

Defendants move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted, and pursuant to Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("Reform Act"), 15 U.S.C. § 78u–4 (1999), for failure to plead fraud with particularity. For the reasons stated below, defendants' motion is granted.

## I. Legal Standard

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the

claim that would entitle him to relief." *Scotto v. Almenas,* 143 F.3d 105, 109–10 (2d Cir.1998) (internal quotations omitted). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998) (internal quotations omitted). Thus, in deciding such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York,* 143 F.3d 31, 36 (2d Cir.1998). Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted). In deciding a Rule 12(b)(6) motion, the district court must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits or documents incorporated in the complaint by reference. *See Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 661 (2d Cir.1996). However, in securities fraud actions, the court "may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC...." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991).

Fed.R.Civ.P. 9(b) sets forth additional pleading requirements with respect to allegations of fraud. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." But, under Rule 9 (b), "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."

Securities fraud actions are subject to the requirements of Rule 9(b). *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994). However, the Reform Act heightened Rule 9(b)'s requirement for pleading scienter. *See* 15 U.S.C. § 78u–4(b)(3)(A); *see also Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999). As a result, in securities fraud actions, scienter may not be averred generally. Rather, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Press,* 166 F.3d at 538 (quoting 15 U.S.C. § 78u–4(b)(3)(A)); *see also Chill v. General Elec. Co.,* 101 F.3d 263, 268–69 (2d Cir.1996).[1]

## II. Background

The facts set forth below are taken from the Complaint and are assumed to be true for purposes of this motion. MediaOne is a Delaware corporation with its principal offices in Englewood, Colorado. Complaint ("Compl.") ¶ 5. The company provides telecommunications services, including cellular and mobile land-line telephone services and network infrastructure and cable services. *Id.* MediaOne purchased Continental Cablevision ("Continental") in 1996. *Id.* ¶ 24. On February 27, 1996, as part of its acquisition of Continental, MediaOne entered into a publicly-disclosed shareholder's agreement with Continental's co-founder, Amos Hostetter. *Id.* ¶ 24. This agreement included a "standstill restriction" which limited Hostetter's ability to propose mergers involving MediaOne. *Id.* At all relevant times, Hostetter owned approximately 56.32 million MediaOne shares (or 9.33% of all outstanding MediaOne shares). *Id.* ¶ 25.

On March 22, 1999, MediaOne announced that it had entered into a defini-

---

**1.** The Second Circuit required securities fraud plaintiffs to allege scienter with particularity even prior to the 1995 enactment of the Reform Act. Indeed, rather than set a novel standard for pleading scienter, the Reform Act merely "heightened the requirement for pleading scienter to the level used by the Second Circuit." *Press,* 166 F.3d at 537, 538; *see also* Elizabeth S. Strong, *Pleading Requirements of the Reform Act,* New York L.J., Oct. 29, 1999, at 1, 4.

tive merger agreement with Comcast whereby Comcast would acquire MediaOne for approximately $48 billion. *Id.* ¶ 26. Under the Comcast merger agreement, MediaOne had forty-five days within which to accept a superior proposal, subject to the payment of a $1.5 billion termination fee to Comcast. *See* MediaOne's March 22, 1999 Form 8–K ("Form 8–K"), Ex. D to 9/5/99 Affidavit of Dennis J. Block, attorney for defendants ("Block Aff."), at 2. However, the agreement prohibited MediaOne and its Directors from soliciting competing proposals. *Id.*

Hostetter expressed his disapproval of the proposed merger with Comcast in a March 25, 1999 letter to the MediaOne Directors. Compl. ¶ 27. In the letter, Hostetter asked to be released from the 1996 standstill restriction so that he could pursue and develop a merger proposal superior to the Comcast merger proposal. *Id.*

Defendant Eichler, MediaOne's President, Legal Counsel and Secretary, responded to Hostetter's request on behalf of the Directors in a letter dated March 31, 1999. *Id.* ¶¶ 6, 28. In the March 31 letter, the Directors agreed to release Hostetter from the standstill restriction. *Id.* ¶ 28. The Directors acknowledged and accepted Hostetter's agreement "not to make any public announcement of [his] efforts to develop a superior proposal without the Directors' written consent, and to respond with 'no comment' if a press inquiry is made." *Id.* ¶ 29 (quoting March 31 letter). Hostetter immediately entered into discussions with third parties regarding the acquisition of MediaOne. *Id.* ¶ 32.

On April 16, 1999, plaintiff Kalnit sold 1,820 shares of MediaOne stock at $65 ⁷⁄₁₆ per share. *Id.* ¶ 31. On April 22, AT & T Corporation ("AT & T") publicly proposed an acquisition of MediaOne for approximately $58 billion. *Id.* ¶ 33. The same day, Hostetter filed a Schedule 13D with the Securities and Exchange Commission disclosing the March 25 and March 31 letters. *Id.* ¶ 34. On May 6, 1999, the date Kalnit filed his class action Complaint, MediaOne's stock price had increased to $79 per share. *Id.* ¶ 35.

In his Complaint, plaintiff purports to represent a plaintiff class consisting of all persons who sold MediaOne shares between March 31 and April 22, 1999. The gravamen of the Complaint is that defendants' failure to disclose certain allegedly material information—namely, that Hostetter was authorized to seek superior merger proposals for MediaOne during the forty-five day waiting period prior to the scheduled closing of the proposed MediaOne/Comcast merger—artificially depressed the market for MediaOne shares causing plaintiff and other class members to sell their MediaOne shares at a deflated price.[2]

### *Discussion*

### III. Claim One: Section 10(b) and Rule 10b–5

Section 10(b) of the Exchange Act prohibits the use of "manipulative or deceptive" practices in connection with the purchase or sale of securities. *See* 15 U.S.C. § 78j(b). Rule 10b–5 sets forth specific practices that are considered "manipulative or deceptive." 17 C.F.R. § 240.10b–

---

**2.** I note that the gravamen of plaintiff's claim is not readily apparent from his poorly drafted Complaint which consists primarily of boilerplate rhetoric and vague, underdeveloped accusations against defendants. Although plaintiff greatly clarified his theories of liability in his response to defendants' motion to dismiss, defendants urge this Court to ignore any new allegations set forth in plaintiff's opposition papers arguing that " 'it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a mo-

tion to dismiss.' " Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Class Action Complaint ("Def.Rep.") at 2–3 (quoting *Lazaro v. Good Samaritan Hosp.,* 54 F.Supp.2d 180, 184 (S.D.N.Y.1999)). Defendants' point is well-taken. However, in the interests of judicial economy, and in keeping with the liberal spirit of Rule 15, I will assume for purposes of this motion that any new factual allegations or theories set forth in plaintiff's opposition papers were properly pleaded in the Complaint.

5(b). Among other things, Rule 10b–5 provides that "[i]t shall be unlawful ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

██ To state a claim under section 10(b) and Rule 10b–5, plaintiff must allege that in connection with the purchase or sale of securities: (1) defendants made a false material representation or omitted to disclose material information; (2) defendants acted with scienter; and (3) plaintiff detrimentally relied upon defendants' fraudulent acts. *See Press*, 166 F.3d at 534 (2d Cir.1999). In addition, as discussed *supra* Part I, plaintiff must allege elements one and two—fraudulent acts and scienter—with particularity in order to meet the heightened pleading requirements set forth in Rule 9(b) and the Reform Act.

In their motion to dismiss, defendants contend that the Complaint must be dismissed pursuant to Rule 12(b)(6) because plaintiff fails to adequately allege material misrepresentation or omission by defendant and/or detrimental reliance by plaintiff and other purported class members. Defendants also argue that the Complaint must be dismissed pursuant to Rule 9(b) and the Reform Act because plaintiff fails to set forth his claims of fraudulent acts and scienter with sufficient particularity.

### A. Misleading Statements and Material Omissions

#### 1. Preliminary Requirements

██ The heightened pleading requirements for the first element of a securities fraud action—that defendants made a false material representation or omitted to disclose material information—are codified in the Reform Act as follows:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant—(A) made an untrue statement of a material fact; or (B) omit-

ted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1).

Plaintiff has met these preliminary requirements for purposes of Rule 12(b)(6), Rule 9(b) and the Reform Act. The Complaint specifies that defendants failed to publicly disclose Hostetter's March 25 letter in which he seeks to be released from the standstill agreement and the Directors' March 31 letter releasing Hostetter and authorizing him to solicit and negotiate superior proposals for MediaOne. Compl. ¶¶ 28–30. In his opposition papers, plaintiff argues that the contents of the March 25 and March 31 letters "completely negate[ ] prior material information in the market", namely defendants' 1996 disclosure of Hostetter's standstill restriction. *See* Plaintiff's Opposition Memorandum of Law ("Opp. Mem.") at 7. Thus, plaintiff alleges that in light of the fact that Hostetter was released from the standstill restriction in March 1999, defendants' earlier public statements regarding the standstill agreement were no longer accurate. *See id.*

#### 2. Materiality and Duty to Disclose

██ "[I]n order to establish a prima facie case that statements were misleading in violation of Rule 10b–5, a plaintiff must show 'that the statements were misleading as to a material fact. It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant.' " *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir.1992) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). For an omission of fact to meet this materiality requirement, "there must be a substantial

likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available." *Basic,* 485 U.S. at 231–32, 108 S.Ct. 978; *see also In re Int'l Bus. Mach. Corp. Secs. Litig.,* 163 F.3d 102, 106–07 (2d Cir. 1998) "The determination of materiality is a mixed question of law and fact that generally should be presented to a jury," rather than dismissed on a 12(b)(6) motion. *Press,* 166 F.3d at 538., "only if no reasonable juror could determine that the undisclosed [fact] would have assumed actual significance in the deliberations of a reasonable investor should materiality be determined as a matter of law." *Id.* (internal quotations omitted).

■ It is important to note, however, that simply because "information may be considered material does not, of itself, mean that companies have a duty to disclose." *See Glazer,* 964 F.2d at 157. That is, "a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 267 (2d Cir.1993); *see also Basic,* 485 U.S. at 239 n. 17, 108 S.Ct. 978. Of relevance here, a duty to disclose arises "when disclosure is necessary to make prior statements not misleading." *In re Time Warner,* 9 F.3d at 268. *See also In re Int'l Bus. Mach. Corp.,* 163 F.3d at 110 ("A duty to update may exist when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event."). In such cases— "where the disclosure duty arises from the combination of a prior statement and a subsequent event"—the distinct concepts of materiality and a duty to disclose overlap. *In re Time Warner,* 9 F.3d at 267–68. "If a reasonable investor would regard the omitted fact as [material], it is difficult to imagine a circumstance where the prior statement would not be rendered misleading in the absence of disclosure." *Id.* at 268.

■ In the instant case, it seems unlikely that the omitted information regarding Hostetter's ability to solicit superior proposals would "significantly alter" a reasonable investor's view of the total information available. This is particularly so in light of the fact that MediaOne expressly disclosed that it could accept superior proposals received within forty-five days of its March 22, 1999 Comcast merger announcement. The March 22 disclosure was sufficient to put reasonable investors on notice that MediaOne was "in play" among corporations and investment bankers seeking merger opportunities during a limited time-period; it is hard to imagine how information regarding Hostetter's ability to also seek merger opportunities for MediaOne during that time period would significantly alter the "total mix".

That said, I decline to find at this preliminary stage that "no reasonable jury could determine that the undisclosed [information regarding Hostetter] would have assumed actual significance in the deliberations" of investors. *Press,* 166 F.3d at 538 (internal quotations omitted). Although defendants made public the fact that they would accept proposals superior to the Comcast offer, it was also public knowledge that, under the Comcast agreement, defendants themselves were prohibited from soliciting proposals. *See* Form 8–K, Ex. D to Block Aff., at 2. A reasonable investor might arguably assume that if defendants could not actively solicit superior proposals, it was less likely that MediaOne would receive a more lucrative merger offer during the waiting period. Accordingly, knowledge of Hostetter's authorization—and his desire—to solicit proposals could be significant to an investor. More important with respect to defendants' duty to disclose is the fact that the public was under the mistaken impression that not only were MediaOne and the Directors precluded from shopping the company but so was Hostetter. Defendants'

1996 disclosure of the standstill restriction announced to the public that Hostetter could not shop the company. By failing to disclose the termination of the standstill restriction, the public may have believed that Hostetter was still precluded from soliciting proposals.[3]

Plaintiff has alleged facts from which a reasonable juror could arguably find that the "total mix" of information changed when Hostetter was permitted to actively seek and develop a superior proposal, something MediaOne and its board could not do. Thus, plaintiff has adequately—although just barely—pled materiality and a corresponding duty to disclose at this early stage of the litigation.

### B. Causation

■ The causation element of a section 10(b) and Rule 10(b)5 claim has two prongs: transaction causation and loss causation. See *Arduini/Messina Partnership v. National Med. Fin. Servs. Corp.*, 74 F.Supp.2d 352, 360 (S.D.N.Y.1999). "Transaction causation" is simply another term for "reliance". See *Press*, 166 F.3d at 539. Accordingly, transaction causation "is properly pled by the allegation that 'but for the defendant's wrongful acts, the plaintiffs would not have entered into the transactions that resulted in their losses.'" *Arduini/Messina*, 74 F.Supp.2d at 359 (quoting *Moore v. Painewebber, Inc.*, 189 F.3d 165, 175 (2d Cir.1999))

■ "To show loss causation, the plaintiff[ ] must show that the defendants' misstatements or omissions were the reason the transaction[s] turned out to be ... losing one[s]." *Moore*, 189 F.3d at 172 (internal quotations omitted); see also PSLRA, 15 U.S.C. § 78u–4 (b)(4). In other words, plaintiff's economic harm must have occurred as a result of defendants' alleged misrepresentations or omissions. See *Citi-*

bank v. K–H Corp., 968 F.2d 1489, 1495 (2d Cir.1992). Loss causation is comparable to the tort concept of proximate cause. See *id.;Herzog v. GT Interactive Software Corp.*, No. 98 Civ. 0085, 1999 WL 1072500, at *10 (S.D.N.Y. Nov. 29, 1999). "The test for loss causation is thus whether the injury suffered was a 'foreseeable consequence of the misrepresentation.'" *Arduini/Messina*, 74 F.Supp.2d at 359 (quoting *Citibank*, 968 F.2d at 1495).

### 1. Transaction Causation/Reliance

■ In the instant case, plaintiff sets forth a "fraud on the market" theory of causation, and therefore he is not required to plead direct reliance on defendants' alleged fraudulent acts. See *In re Quintel Entertainment Inc. Sec. Litig.*, 72 F.Supp.2d 283, 296 (S.D.N.Y.1999). The Supreme Court explained the "fraud on the market" theory as follows:

> "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations."

*Basic*, 485 U.S. at 241–42, 108 S.Ct. 978 (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160–61 (3d Cir.1986)) (alterations in original). Based on this notion of an open and efficient securities market, plaintiffs advancing a fraud on the market theory need not plead direct reliance because the element of reliance is presumed: "[R]eliance

---

**3.** Although defendants emphasize that Hostetter was a minority shareholder of MediaOne, *see* Defendants' Memorandum of Law ("Def.Mem.") at 11, Hostetter was no ordinary minority shareholder. Not only was he the co-founder of Continental, a company MediaOne acquired, but clearly he had extensive knowledge, expertise and clout in the telecommunications market.

on material misrepresentations may be presumed in open-market transactions because such investors rely on the integrity of the market to set a fair price and in that sense rely on any misrepresentations that distort the market price." *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir.1996) (citing *Basic*, 485 U.S. at 241–247, 108 S.Ct. 978). *See also Harsco Corp. v. Segui*, 91 F.3d 337, 342 & n. 5 (2d Cir.1996); *In re Quintel*, 72 F.Supp.2d 283, 296.

Plaintiff alleges that he and the purported class members relied upon the "integrity of the market" when they sold their MediaOne shares, and that defendants' allegedly fraudulent actions compromised the integrity of that market. Compl. ¶ 44. Specifically, plaintiff contends that had defendants disclosed Hostetter's authorization to seek superior proposals, the market price of MediaOne shares would have been greater than $65.4375 when plaintiff sold his shares on April 16. *See* Compl. ¶ 44; Opp. Mem. at 15. In other words, plaintiff argues that because information about Hostetter's ability to shop the company was unavailable, the market undervalued MediaOne shares and plaintiff sold his shares for less than their true worth. Under the fraud on the market theory as set forth above, plaintiff's allegations are sufficient to plead the element of transaction causation/reliance at this preliminary stage.

Defendants correctly argue that the fraud on the market theory creates a rebuttable rather than absolute presumption of reliance. *See* Def. Mem. at 14. In *Basic*, the Supreme Court held that "[a]ny showing that severs the link between the alleged misrepresentation and either price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248, 108 S.Ct. 978. The *Basic* Court set forth examples of factual allegations sufficient to rebut a presumption of reliance including a showing that, despite defendants' "alleged-

ly fraudulent attempt to manipulate market price, [the truth] credibly entered the market and dissipated the effects of the misstatements." *Id.* at 248–49, 108 S.Ct. 978. A defendant could also rebut the presumption of reliance by showing that the plaintiff believed that the stock at issue "was artificially underpriced, but sold his shares nevertheless because of other unrelated concerns, e.g., potential antitrust problems, or political pressures to divest from shares of certain businesses." *Id.* at 249, 108 S.Ct. 978.

Here, defendants have failed to make any showing which would rebut the presumption of reliance established by plaintiff. Defendants do not argue that, despite their alleged failure to disclose the March 25 and March 31 letters prior to April 22, the market had knowledge of Hostetter's authorization to shop MediaOne at the time plaintiff sold his shares on April 16. Nor do defendants allege that plaintiff was aware that the market price for MediaOne shares was artificially depressed but decided to sell his shares anyway. Instead, defendants argue that"[p]laintiff's sale of his MediaOne stock at a price significantly below the consideration he would have received in the Comcast transaction itself belies his supposed reliance on a speculative potential transaction that might have been an alternative to the Comcast transaction." Def. Mem. at 14. This statement is insufficient to rebut the presumption of reliance because it does not address the link between defendants' alleged failure to disclose information to the market and "either the price received by plaintiff [for his MediaOne shares] . . . or his decision to trade at a fair market price." *See Basic*, 485 U.S. at 248, 108 S.Ct. 978. Defendants' argument merely attacks the sufficiency of plaintiff's allegations of direct reliance on defendants' failure to disclose the waiver of Hostetter's standstill restriction. However, as set forth above, whether plaintiff has sufficiently al-

leged direct reliance is irrelevant under a fraud on the market theory.[4]

## 2. Loss Causation/Proximate Cause

■ Plaintiff's theory of harm is that defendants' alleged omissions compromised the integrity of the market, and therefore when plaintiff sold his MediaOne shares, he did so at an artificially deflated price. Plaintiff has adequately alleged that defendants' actions—the failure to disclose Hostetter's authorization to shop MediaOne—deflated the market for MediaOne shares, and therefore they were the proximate cause of plaintiff's harm—selling his MediaOne shares for less than the shares were worth. In other words, plaintiff's injury is a foreseeable consequence of defendants' failure to disclose allegedly material information to the market.

## C. Scienter

■ While materiality and causation are adequately pled, the critical element of scienter is not. As set forth above, see supra Part I, in order to properly allege scienter under the heightened pleading requirements set forth in the Reform Act, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–

4. Moreover, even if plaintiff was not explicitly proceeding under a fraud on the market theory, the issue of whether he properly alleges direct reliance would still be irrelevant. Similar to fraud on the market claims, in cases involving material omissions—as opposed to material misrepresentations—the element of reliance is presumed. See, e.g., Press, 166 F.3d 529 (stating that reliance can be presumed in cases of non-disclosure or omission of material fact); Burke v. Jacoby, 981 F.2d 1372, 1378–79 (2d Cir.1992) ("In connection with a claim of material omission ... 'positive proof of reliance is not a prerequisite to discovery. All that is necessary is that the facts withheld be material....' "); Benjamin v. Kim, 95 Civ. 9597, 1999 WL 249706, *11 (S.D.N.Y. Apr. 28, 1999) (finding that "with regard to the alleged omissions, plaintiffs are not required to submit positive proof of reliance").

4(b)(2). See also Press, 166 F.3d at 537–38 (finding the Reform Act heightened the requirement for pleading scienter to the level previously required in the Second Circuit). Accordingly, a plaintiff cannot base a claim of fraud on speculation and conclusory allegations, but "must allege facts that give rise to a strong inference of fraudulent intent." Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir.1996) (internal quotations omitted). To demonstrate an inference of fraudulent intent, a plaintiff must allege either (1) motive and opportunity to commit fraud; or (2) circumstantial evidence of conscious misbehavior or recklessness. See Press, 166 F.3d at 538.

## 1. Motive and Opportunity

■ Motive and opportunity to commit fraud means that defendants could realize concrete benefits from a fraudulent act (motive) and that defendants had the means of committing the fraudulent act (opportunity). See Shields, 25 F.3d at 1130. Defendants contend that plaintiff has failed to adequately allege motive and opportunity. In response, plaintiff relies on language in Press in which the Second Circuit found the pleading requirements for scienter satisfied where the plaintiff had "barely alleged motive and opportunity." Press, 166 F.3d at 538 (in summary judgment context).

This is not to say that defendants' argument is without merit. Indeed, the fact that plaintiff chose to sell his stock on April 16 for $65.4375 rather than to wait three weeks until the close of the Comcast merger when the offering price for plaintiff's stock would have been $80 (or greater if MediaOne had received a superior offer during that time) raises a strong inference that plaintiff sold his shares based upon reasons wholly unrelated to Hostetter's ability or inability to shop MediaOne. Although this fact is irrelevant to a fraud on the market theory, it supports this Court's skepticism as to the alleged materiality of Hostetter's release from the standstill restriction and generally raises questions as to the validity of Kalnit's claims and his adequacy to act as a class representative.

In *Press,* a purchaser of treasury bills brought a section 10(b) claim against his broker-dealer for failure to disclose that funds invested in the bills would not be available immediately at maturity and that defendants would be taking a markup fee from the transaction. Press alleged that defendants' fraudulent motive was to have use of the funds for a period of time after the bills matured. The Second Circuit found that plaintiff's allegation satisfied the pleading requirements for scienter. *See id.* (finding element of scienter satisfied but affirming lower court's dismissal because plaintiff failed to adequately plead the element of materiality).

Motive was also adequately pled in a class action suit in which shareholders alleged that a corporation and its CEO made misleading statements in violation of section 10(b) in order to manipulate the price of the company's stock so that the CEO could sell his shares at inflated prices. *See Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 85 (2d Cir.1999). In another recent class action suit, shareholders similarly alleged that the corporation and its eight directors violated section 10(b) by making misleading statements regarding the company's performance in order to inflate the price of the company's stock so that the directors could subsequently profit from insider sales. Noting that the large number of defendants making insider trades indicated unusual insider trading activity, the court found that the plaintiffs had adequately pled scienter. *See In re Quintel,* 72 F.Supp.2d at 294–95.

In the instant case, there is no question that the individual defendants, given their positions as Directors of MediaOne, had the opportunity to commit fraudulent acts. *Compare* Compl. ¶¶ 5–16, 41 *with San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 813 (2d Cir.1996) (finding "no doubt" that defendant corporate directors had the opportunity to manipulate the company's stock price given their positions of power and authority within the company).

However, the Complaint is utterly silent on the question of motive. Nowhere in the Complaint does plaintiff allege that defendants benefitted from the alleged misrepresentation and omission. Nor are there any facts from which an inference of motive can be drawn. Put simply, there is no indication that defendants profited from their alleged material omissions.

Plaintiff does argue in his opposition papers that defendants were motivated by a desire to suppress criticism of the Comcast offer, especially regarding the amount of consideration that had been negotiated. *See* Opp. Mem. at 20. Even if alleged in the Complaint, however, a desire to suppress criticism does not constitute a "concrete benefit" sufficient to support an allegation of motive. *See, e.g., Chill,* 101 F.3d at 268 (finding that maintaining appearance of corporate profitability does not entail concrete benefit); *Novak v. Kasaks,* 997 F.Supp. 425, 430 n. 5 (S.D.N.Y.1998) (defendants' issuance of fraudulent statements to conceal mismanagement not sufficient to show motive and opportunity).

Although this Circuit has been generous to plaintiffs by allowing "fairly tenuous inferences" of motive to satisfy pleading requirements, here, plaintiff has not met even this minimal standard. *Cf. Press,* 166 F.3d at 538. There is no allegation of any insider trading by any of the defendants, nor is there any allegation of pecuniary gain. No matter how generous, *Press* does not permit mere conclusory allegations of motive to satisfy the requirements of Rule 9(b) and the Reform Act.

### 2. Recklessness

 As set forth above, fraudulent intent can also be established by alleging facts which constitute "strong circumstantial evidence" of conscious misbehavior or recklessness.[5] *Chill,* 101 F.3d at 268–69.

---

**5.** Although courts often refer to "conscious misbehavior" or "recklessness", the terms appear to be legally interchangeable. Thus, for

Recklessness is "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care.'" *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir.1998) (quoting *Rolf v. Blyth, Eastman, Dillon & Co.*, 570 F.2d 38, 46 (2d Cir.1978)). In addition, any showing of recklessness "must be such that it gives rise to a strong inference of fraudulent intent." *Chill*, 101 F.3d at 269; *see also Stevelman*, 174 F.3d at 84–85 (finding violations of GAAP or SEC regulations without corresponding indicia of fraudulent intent insufficient to state securities fraud claim); *In re Kidder Peabody Secs. Litig.*, 10 F.Supp.2d 398, 414 (S.D.N.Y.1998) ("[P]laintiffs must demonstrate that defendants acted with knowledge of the falsity of their statements and with an intent to deceive investors ... or with such recklessness that an intent to deceive may be inferred."). Not surprisingly, the Second Circuit has recognized that "there is a significant burden on the plaintiff in stating a fraud claim based on recklessness." *Chill* 101 F.3d at 270. In the instant case, plaintiff does not meet this burden for the following reasons.

■ *First*, the Complaint fails to set forth any particularized facts which would support a "strong inference" of recklessness and corresponding fraudulent intent. Instead, plaintiff adopts the ineffective and improper technique of "coupl[ing] a factual statement with a conclusory allegation of fraudulent intent [and recklessness]." *Shields*, 25 F.3d at 1129. For example, plaintiff alleges that defendants "recklessly issued, caused to be issued or participated in the issuance of the preparation and issuance of public statements and reports

as particularized [in the Complaint] which were materially false and misleading." Compl. ¶ 40. Plaintiff also alleges that "defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though they were available to them." *Id.* ¶ 42; *see also id.* ¶ 41 ("With knowledge or reckless disregard of the true facts concerning MediaOne, [defendants] caused each of the public statements issued during the Class Period to contain misstatements and omissions of material facts.").

In *Shields*, the Second Circuit flatly rejected the plaintiff's similar attempt to plead recklessness through boiler-plate allegations that defendants' conduct was "knowing and/or reckless":

> Shields's frequent conclusory allegations—that Defendants "knew but concealed" some things, or "knew or were reckless in not knowing" other things—do not satisfy the pleading requirements of Rule 9(b). We have held in the context of securities fraud claims that such allegations are so broad and conclusory as to be meaningless.

*Shields*, 25 F.3d at 1129 (internal quotations omitted); [6] *see also Leventhal v. Tow*, 48 F.Supp.2d 104, 113 (D.Conn.1999) (finding no showing of recklessness where complaint merely set forth conclusory allegations "coupled with the language of Rule 10b–5" and labeling such tactics "[a] formulaic pleading technique [that] has been regularly rejected by the Second Circuit.").[7]

---

the sake of simplicity, I refer only to recklessness in my discussion.

**6.** *Shields* was decided prior to the 1995 enactment of the Reform Act, and therefore it references Rule 9(b) rather than the Act. However, as explained *supra* note 1, even before the passage of the Reform Act, the Second Circuit required plaintiffs to "state with particularity" facts giving rise to a

strong inference of scienter. *Press,* 166 F.3d at 537–38.

**7.** Plaintiff argues that *Press* lowered the pleading standard set forth in *Chill. See* Opp. Mem. at 23, n. 23. *Press,* however, does not address the standard for allegations of recklessness. It addresses only the standard for pleading motive and opportunity. *See Press,* 166 F.3d at 538.

■ *Second,* even looking beyond plaintiff's boiler-plate allegations, there is simply no way that a reasonable jury could consider defendants' conduct reckless behavior. Recklessness here requires a showing that defendants' failure to disclose Hostetter's authorization to solicit merger proposals constitutes "conduct which [was] 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care.'" *McNulty,* 137 F.3d at 741. Defendants' failure to disclose is "highly unreasonable" and an "extreme departure from the standards of ordinary care" if and only if defendants had an obvious and absolute duty to disclose such information to its shareholders in the first place. As discussed above, however, it is extremely doubtful that defendants had any duty—let alone an obvious and absolute duty—to disclose Hostetter's authorization. *See supra* Part III.A.2. Indeed, plaintiff has only barely alleged the elements of materiality and a duty to disclose—namely that a reasonable investor would consider Hostetter's ability to shop MediaOne "as having significantly altered the total mix of information available" in April 1999—for purposes of this motion to dismiss. Construing plaintiff's allegations in the most generous light possible, defendants' duty to disclose is a close issue at best. Accordingly, even if a jury were to ultimately find that defendants had a duty to disclose information regarding Hostetter's release, their failure to disclose could at most be considered negligent conduct. Negligent conduct is insufficient to raise an inference of fraudulent intent. *See, e.g., Ferber v. Travelers Corp.,* 802 F.Supp. 698, 713 (D.Conn.1992) (citing *Ernst & Ernst v.*

*Hochfelder,* 425 U.S. 185, 194–214, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), for proposition that "negligent conduct, whether gross, grave, or inexcusable does not suffice [to show fraudulent intent] under Section 10(b)").

Plaintiff makes much of the fact that, in their March 31 letter to Hostetter, defendants "acknowledg[ed] and accept[ed] [Hostetter's] agreement not to make any public announcement of [his] efforts to develop a Superior Proposal without the Board's written consent, and to respond with 'no comment' if a press inquiry is made." Compl. ¶ 29 (quoting March 31, 1999 letter from MediaOne Board to Hostetter). However, defendants' request that Hostetter "not make any public announcement" of his release from the standstill agreement would only be relevant to the issue of recklessness if defendants had a clear obligation to disclose such information. That is simply not the case here.[8]

Because plaintiff has failed to plead either (1) motive and opportunity or (2) circumstantial evidence of recklessness, he has not adequately alleged scienter and his section 10(b) and Rule 10b–5 claims must be dismissed pursuant to Rule 9(b) and the Reform Act.

## IV. Claim Two: Exchange Act Section 20(a) Claim

Section 20(a) provides as follows:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to

---

8. In addition, despite plaintiff's claims to the contrary, *see* Compl. ¶ 29, nowhere in the text of the letter do defendants prohibit Hostetter from disclosing his solicitation efforts. The directors merely ask that Hostetter seek approval from the MediaOne Board before making public announcements in connection with MediaOne. Thus, the letter itself fails to give rise to a "strong inference" of an intent by defendants "to deceive, manipulate or defraud" MediaOne shareholders. *SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1467 (2d

Cir.1996). Indeed, the logical inference to be drawn from the March 25, March 31 and April 1 letters is that defendants' decision not to disclose Hostetter's release, as well as their request that Hostetter not disclose his negotiations absent Board approval, was motivated by a concern for maintaining good relations with Comcast during the forty-five day waiting period—or at least until MediaOne received a better offer—rather than by any intent to defraud shareholders.

the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a)(1999). Plaintiff seeks to hold the individual directors of MediaOne liable as control persons for misrepresentations and omissions made by them as the Board of MediaOne. To begin, absent a primary violation, a plaintiff cannot state a claim of control person liability under section 20(a). Therefore, because plaintiff has not adequately alleged a section 10(b) or Rule 10b–5 violation, plaintiff's section 20(a) claim must fail.

■■■ Moreover, even assuming that plaintiff has adequately stated a claim under section 10(b) and Rule 10b–5, the individual directors would not be seen as "control persons" under plaintiff's theory of liability. In order to plead control person liability under section 20(a), plaintiff must demonstrate: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) the controlling person's culpability in the primary violation. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998). Under plaintiff's theory, however, the Directors would be primary violators rather than control persons, because primary liability may be imposed " 'not only on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration.' " *First Jersey*, 101 F.3d at 1471 (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994)). The allegedly fraudulent March 31 letter to Hostetter was signed by Eichler on behalf of all the Directors. Compl. ¶ 28. Moreover, plaintiff alleges that the Directors had knowledge of the misrepresentations and omissions. *Id.* ¶ 42. Therefore, under plaintiff's own theory, the Directors could not be control persons and section 20(a) does not apply. Accordingly, plaintiff's section 20(a) claim

is dismissed as a matter of law pursuant to Rule 12(b)(6).

## V. Leave to Amend

Plaintiff has requested leave to amend any deficient claims. *See* Opp. Mem. at 22. Pursuant to Rule 15(a), leave to amend a complaint "shall be freely granted when justice so requires." *See Cortec Indus., Inc.*, 949 F.2d at 48 ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). In keeping with the liberal spirit of Rule 15, plaintiff may amend his Complaint with respect to both claims if he can cure the defects set forth herein.

## VI. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted with leave to amend. Any amended complaint must be served and filed no later than twenty-one days from the date of this Order. A conference is scheduled for January 27, 2000 at 4:30 p.m.