### Richard L. KALNIT, Plaintiff–Appellant,

### v.

### Frank M. EICHLER, Robert L. Crandall, Charles P. Russ, III, Pierson M. Grieve, Louis A. Simpson, Allan D. Gilmour, Charles M. Lillis, Grant A. Dove, John Slevin, Kathleen A. Cote, Daniel W. Yohannes and Mediaone Group, Inc., Defendants–Appellees.

### Docket No. 00–7487.

United States Court of Appeals, Second Circuit.

Argued: Dec. 12, 2000.

Decided: Sept. 5, 2001.

Arthur N. Abbey, Abbey, Gardy & Squitieri, LLP, New York, N.Y. (Stephen J. Fearon, Jr., on the brief) for Plaintiff–Appellant.

Dennis J. Block, Cadwalader, Wickersham & Taft, New York, N.Y. (Jason M. Halper, Jennifer L. Hurley, on the brief) for Defendants–Appellees.

PARKER, Circuit Judge:

In this uncertified securities fraud class action, plaintiff Richard L. Kalnit, on behalf of himself and all others similarly situated, alleges that defendants violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1994) ("section 10(b)") and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (2001) ("Rule 10b–5"), by fraudulently fail-

ing to disclose material information in connection with a proposed merger between MediaOne Group, Inc. ("MediaOne") and Comcast Corporation ("Comcast"). Kalnit and the purported class members sold shares of MediaOne stock during the period from March 31, 1999 through April 22, 1999, inclusive, at an allegedly artificially deflated price due to defendants' alleged fraud.

The United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) dismissed plaintiff's amended complaint for failure to allege the element of scienter with adequate particularity. *See Kalnit v. Eichler,* 99 F.Supp.2d 327, 344 (S.D.N.Y.2000) *("Kalnit II")*. The district court dismissed plaintiff's first complaint for the same reason, but granted plaintiff leave to amend. *See Kalnit v. Eichler,* 85 F.Supp.2d 232, 245–46 (S.D.N.Y.1999) *("Kalnit I")*. Plaintiff appeals the district court's second dismissal, contending that his amended complaint adequately set forth scienter allegations.

For the reasons set forth below, we affirm the decision of the district court to dismiss plaintiff's complaint without leave to amend.

## I. BACKGROUND

### A. *Factual Background*

Mindful that we are reviewing a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the following facts are contained in the plaintiff's amended complaint and are assumed to be true. *See Press v. Chem. Inv. Servs.,* 166 F.3d 529, 534 (2d Cir.1999).

Plaintiff-appellant Richard Kalnit was an investor in MediaOne, who sold 1,820 shares of MediaOne stock on April 16, 1999. He purports to represent a class

comprised of those who sold shares of MediaOne stock during the period between March 31, 1999 and April 22, 1999.[1]

Defendant-appellee, MediaOne, is a Delaware corporation with its principal place of business in Colorado. MediaOne provides telecommunications services, including local, long distance and cellular telephone services. The 11 individual defendants-appellees were, at the time relevant to this action, MediaOne officers or members of MediaOne's board of directors. Defendant Lillis was the Chairman of the Board, President and Chief Executive Officer, and a director. Defendant Eichler was MediaOne's Executive Vice President, General Counsel and Secretary.

In 1996, MediaOne acquired a company called Continental Cablevision ("Continental"). As part of this acquisition, MediaOne entered into a publicly-disclosed shareholder's agreement with Amos Hostetter, Continental's co-founder. This agreement included a "standstill" provision which limited Hostetter's ability to propose mergers, directly or indirectly, involving MediaOne (the "standstill restriction"). At all times relevant to this suit, Hostetter owned 56.3 million shares, or approximately 9.3% of all outstanding MediaOne shares, and was MediaOne's largest shareholder. Hostetter also possessed considerable clout in the telecommunications industry.

On March 22, 1999, MediaOne announced that it had entered into a "definitive Merger Agreement" with Comcast, whereby Comcast would acquire MediaOne for approximately $48 billion. Pursuant to this agreement, each MediaOne shareholder would receive 1.1 shares of Comcast common stock for each share of MediaOne

---

1. The district court did not certify the class under Fed.R.Civ.P. 23. Therefore, this opin-

ion pertains only to Kalnit for res judicata purposes. *See Press,* 166 F.3d at 532 n. 1.

common stock. The agreement allowed MediaOne forty-five days to accept a superior proposal, subject to payment of a $1.5 billion termination fee to Comcast. This agreement also contained a provision that prohibited defendants from directly or indirectly soliciting acquisition proposals that would compete with the Comcast proposal. This provision, section 6.03 of the agreement, also referred to as the "No Shop" provision, stated:

> From the date hereof until the termination hereof, MediaOne will not, and will cause the MediaOne Subsidiaries and the officers, directors, employees ... or advisors of MediaOne and the MediaOne Subsidiaries not to, directly or indirectly: (i) take any action to solicit, initiate, facilitate or encourage the submission of any Acquisition Proposal; and (ii) other than in the ordinary course of business and not related to an Acquisition Proposal, engage in any discussions or negotiations with, or disclose any non-public information relating to MediaOne or any MediaOne Subsidiary or afford access to the properties, books or records of MediaOne or any MediaOne Subsidiary to, any Person who is known by MediaOne to be considering making or has made, an Acquisition Proposal.

Section 10.1 of the agreement provided that Comcast could terminate if MediaOne breached its "no shop" obligation. In short, MediaOne could accept a superior offer within forty-five days, but could not directly or indirectly solicit such offers.

On March 25, 1999, Hostetter sent a letter to the defendants, expressing his dissatisfaction with the terms of the Comcast Agreement, and seeking to be released from the 1996 standstill restriction to permit him to develop a superior proposal. On March 31, 1999, defendant Eichler, on behalf of all defendants, wrote to

Hostetter and agreed to waive the 1996 standstill restriction. Eichler informed Hostetter that MediaOne had "no objection to [his] speaking with third parties about participating in any Superior Proposal." Additionally, Eichler confirmed an agreement of March 30, 1999, between MediaOne and Hostetter that Hostetter would not "make any public announcement of [his] efforts to develop a Superior Proposal without the Board's written consent, and to respond with 'no comment' if a press inquiry is made."

In the meantime, on March 30, 1999, MediaOne filed its Annual Report (Form 10K) with the Securities & Exchange Commission ("SEC") for the fiscal year ending December 31, 1998. This report included information about the Comcast Agreement, similar to the information previously released to the public, but did not disclose the Hostetter letter or defendants' response.

On April 5, 1999, MediaOne filed a Proxy Statement pursuant to section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) (1994 & Supp. V 1999), informing shareholders that a special meeting regarding the proposed Comcast merger would likely occur. This statement did not disclose any of the communications between Hostetter and MediaOne's Board of Directors.

On April 16, 1999, plaintiff-appellant Kalnit sold 1,820 shares of MediaOne stock at approximately $65.44 per share, with no knowledge about Hostetter's release from the 1996 standstill restriction or about his desire to seek a superior proposal.

On April 22, 1999, AT & T Corporation ("AT & T") publicly proposed to acquire MediaOne in a transaction valued at $58 billion, approximately $9 billion more than the value of the Comcast proposal. Also on April 22, Hostetter filed a Schedule 13D with the SEC, disclosing, for the first time,

MediaOne's waiver of the 1996 standstill restriction. The Schedule 13D also revealed that Hostetter had discussed with AT & T, among others, the possibility of a superior proposal for MediaOne and that AT & T's current proposal resulted from these discussions.

On April 23, 1999, MediaOne's stock opened at $79 per share and closed at $77.375 per share, up from a value of $69.50 per share on April 22, 1999. Four days later, MediaOne's stock closed at $81.8125 per share.

On May 1, 1999, MediaOne's Board voted unanimously in favor of terminating the Comcast agreement in order to accept AT & T's proposal. A few days later, AT & T and Comcast negotiated a transaction where Comcast would not interfere with AT & T efforts to acquire MediaOne, and AT & T and Comcast would exchange certain cable properties resulting in a net increase in Comcast's cable subscribers.

On May 6, 1999, MediaOne officially terminated the Comcast agreement. Appellant filed his complaint that same day.

### B. *Proceedings Below*

Kalnit filed this complaint as a class action, purporting to represent himself and all others who sold MediaOne securities during the period from March 31, 1999 through April 22, 1999 inclusive. He asserted claims under sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), alleging that defendants fraudulently failed to disclose Hostetter's March 25, 1999 letter and their subsequent

decision to release Hostetter from the 1996 standstill restriction.

On December 22, 1999, the district court granted defendants' motion to dismiss the original complaint, concluding that the complaint failed to plead scienter adequately. *See Kalnit I,* 85 F.Supp.2d at 242. The court granted plaintiff leave to amend his complaint to cure the noted deficiency. *See id.* at 246.[2]

On January 2, 2000, Kalnit filed an amended complaint, containing added scienter allegations. Defendants again moved to dismiss this complaint, contending that the amended complaint failed to cure the defects noted in the original complaint. The district court agreed and concluded that the amended complaint still failed to "give rise to a 'strong inference' of defendants' intent to deceive, manipulate or defraud MediaOne shareholders." *Kalnit II,* 99 F.Supp.2d at 336. The district court also declined, on futility grounds, to give plaintiff leave to amend the complaint a second time. *See id.* at 344.

Judgment was entered on April 11, 2000, and plaintiff's appeal followed.

### II. DISCUSSION

Kalnit argues on appeal that the district court's dismissal was in error because his complaint adequately alleged scienter.[3]

### A. *Standard of Review*

"We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual alle-

---

**2.** The district court also dismissed plaintiff's section 20(a) claims that sought to hold defendants liable as 'control persons' for alleged omissions and misrepresentations, noting that, under plaintiff's theory, defendants would actually be liable (if at all) as primary violators rather than as control persons. *Kal-*

*nit I,* 85 F.Supp.2d at 246. Plaintiff does not raise any section 20(a) issues on appeal.

**3.** We note that Kalnit does not contend on appeal that the district court abused its discretion in denying him leave to amend his complaint.

gations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir.2000). A dismissal is upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation omitted).

### B. *Scienter*

■ "To state a cause of action under section 10(b) and Rule 10b–5, a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996) (citing *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 264 (2d Cir.1993)).[4] The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b–5, that the plaintiff must allege is " 'an intent to deceive, manipulate or defraud.' " *Ganino*, 228 F.3d at 168 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

■ A complaint asserting securities fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires fraud to be alleged with particularity. *Ganino*, 228 F.3d at 168; *see also* Fed.R.Civ.P. 9(b) ("In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity."). Additionally under Rule 9(b), however, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b).

In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub.L. No. 104–67, 109 Stat. 737, which, among other things, imposed heightened pleading requirements for plaintiffs in securities fraud actions. The PSLRA's scienter provision provides:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2) (1994 & Supp. V 1999) (codifying PSLRA § 101(b), 109 Stat. at 747).

■ The PSLRA's language echoed this Court's scienter standard. Before the PSLRA's enactment, we held that, to be adequate, scienter allegations must "give rise to a strong inference of fraudulent intent." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir.2000). A plaintiff can establish this intent " hat defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' " *Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

In *Novak*, we concluded that the PSLRA "did not change the basic pleading standard for scienter in this circuit." *Novak*, 216 F.3d at 310. Thus, both options for demonstrating scienter, either with motive and opportunity allegations or with allegations constituting strong circumstan-

---

4. Congress's amendments to section 10, passed in 2000, do not affect the merits of this appeal. *See* Consolidated Appropriations–FY 2001 (2000), Pub.L. No. 106–554, Appendix E H.R. 5660, 114 Stat. 2763, 2763A–365 (2000).

tial evidence of conscious misbehavior or recklessness, survive the PSLRA. *See Ganino*, 228 F.3d at 169–70. We therefore examine Kalnit's complaint under both methods of establishing scienter.

### 1. *Motive and Opportunity*

As the district court noted, "it is undisputed that the individual defendants, as Directors of MediaOne, had the opportunity to commit fraudulent acts." *Kalnit II*, 99 F.Supp.2d at 335. The central issue, therefore, is whether plaintiff has sufficiently alleged motive.

Plaintiff points to several allegations in the complaint in his attempt to demonstrate defendants' motive to defraud the MediaOne shareholders. First, plaintiff contends that, by failing to disclose the Hostetter release, defendants (1) were allowed to obtain another $12.00 per share when MediaOne entered into the agreement with AT & T, Appellant's Br. at 16; (2) "protected the significant change of control payments that would be jeopardized if it became known that Defendants violated" the Comcast Agreement, Appellant's Br. at 17; and (3) protected defendants Lillis and Eichler specifically, because they had lucrative provisions in the Comcast Agreement, including a large lump sum payment and vested pension benefits, Appellant's Br. at 17–18. Second, plaintiff asserts that defendants were motivated by a desire to avoid personal liability for the breach of the Comcast Agreement. Finally, plaintiff alleges that defendants were motivated by a desire to ensure that Hostetter would be able to obtain a superior proposal, because disclosure of the Hostetter release would jeopardize this possibility.

■ Sufficient motive allegations " 'entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures al-

leged.' " *Novak*, 216 F.3d at 307 (quoting *Shields*, 25 F.3d at 1130). Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud. *Novak*, 216 F.3d at 307–08. Insufficient motives, we have held, can include (1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation. *Id.* (citing cases). On the other hand, we have held motive sufficiently pleaded where plaintiff alleged that defendants misrepresented corporate performance to inflate stock prices while they sold their own shares. *Id.* (citing cases).

■ "To allege a motive sufficient to support the inference [of fraudulent intent], a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." *Shields*, 25 F.3d at 1130. Noting the absence of insider trading allegations, in *Shields*, we rejected as insufficient plaintiffs' allegations that the defendants concealed and misrepresented the corporation's financial condition to inflate the price of the common stock and to maintain artificially high prices in order to protect their executive positions and compensation. *Id.* Such motive allegations, we observed, were common to all corporate executives and, thus, too generalized to demonstrate scienter. *Id.*

Likewise, in *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995), we rejected as insufficient motive allegations plaintiff's assertion that the officers were motivated to inflate the value of stock to increase their executive compensation. We concluded:

> Plaintiffs' allegation that defendants were motivated to defraud the public

because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions. "[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated." *Id.* (alteration in original) (quoting *Ferber v. Travelers Corp.*, 785 F.Supp. 1101, 1107 (D.Conn.1991)). Again, plaintiffs' motive allegations were too generalized to demonstrate defendants' "concrete and personal benefit" from the alleged fraud.

In *Chill v. General Electric Co.*, 101 F.3d 263, 267 (2d Cir.1996), plaintiffs alleged that "GE's interest in justifying to its shareholders its over $1 billion investment in [its subsidiary] gave GE a motive to willfully blind itself to facts casting doubt on [the subsidiary's] purported profitability." We held that this allegation did not sufficiently demonstrate GE's motive to defraud shareholders. *Id.* at 268. We stated that "such a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter." *Id.; see also San Leandro*, 75 F.3d at 814 (company's desire to maintain a high bond or credit rating does not qualify as sufficient motive, because this desire can be imputed to all companies). Other courts have rejected similar generalized motives in other cases. *See, e.g., Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 622 (4th Cir.1999) (in merger context, plaintiffs' allegations that director sought to depress the stock price to assure the success of a merger to retain a position on the board and obtain a higher price for his stock did not constitute an adequate motive); *Leventhal v. Tow*, 48 F.Supp.2d 104, 115 (D.Conn.1999) (plaintiff's allegations that defendants had a motive to artificially in-

flate stock price to get more favorable terms in stock-for-stock transactions and debentures are too generalized to establish scienter).

These cases lead us to agree with the district court's conclusion that plaintiff's motive allegations are insufficient. First, plaintiff's allegation that defendants were motivated to conceal the Hostetter communications to protect the lucrative compensation provisions in the Comcast agreement are too generalized to support scienter adequately. As we made clear in *Acito*, an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers. *Acito*, 47 F.3d at 54. Second, the avoidance of personal liability motive is too speculative and conclusory to support scienter. *See San Leandro*, 75 F.3d at 813 ("Plaintiffs do not ... enjoy a license to base claims of fraud on speculation and conclusory allegations."). As the district court explained, there is no reason to expect that Comcast would sue MediaOne's directors individually for breach of the No Shop provision. *Kalnit II*, 99 F.Supp.2d at 341. Third, plaintiff's allegation that defendants were motivated to conceal the Hostetter release to ensure that Hostetter would be able to obtain the AT & T agreement is not only conclusory and speculative, but nonsensical as well. Achieving a superior agreement with AT & T does not demonstrate defendants' intent to benefit themselves at the expense of the shareholders because the shareholders themselves would benefit from a superior transaction. It is also for this reason that plaintiff's argument that the defendants wanted to depress MediaOne's stock price to make the AT & T agreement "appear more valuable" likewise makes no sense and is similarly insufficient. Where " 'plaintiff's view of the facts defies economic reason, ... [it] does

not yield a reasonable inference of fraudulent intent.'" *Shields,* 25 F.3d at 1130 (quoting *Alt. Gypsum Co. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 514 (S.D.N.Y. 1990)).

Plaintiff also argues that, because the district court stated that the motive allegations were sufficient to show that the defendants had "defrauded Comcast," the allegations sufficiently·demonstrate an intent to defraud the shareholders, because "just as Comcast would want to know the information which Defendants concealed, investors would also want to know the same information". Appellant's Br. at 33 (citing *Kalnit II,* 99 F.Supp.2d at 339). We disagree. We note that this Court has ruled that stock price manipulation in the acquisition context may be sufficient to establish scienter, and has rejected the proposition that "the desire to consummate any corporate transaction cannot ever be a motive for securities fraud." *Rothman v. Gregor,* 220 F.3d 81, 93–94 (2d Cir.2000) (citing *Time Warner,* 9 F.3d at 270). In this situation, however, any intent to defraud·Comcast cannot be conflated with an intent to defraud the shareholders. As we noted earlier, achieving a superior merger benefitted all shareholders, including the defendants. Additionally, the desire to achieve the most lucrative acquisition proposal can be attributed to virtually every company seeking to be acquired. Such generalized desires do not establish scienter. *See, e.g., San Leandro,* 75 F.3d at 814.

Plaintiff acknowledges that mere ownership of stock or protection of executive compensation are insufficient to establish motive, but argues that *Acito,* which

held that "the existence, *without more,* of executive compensation dependent upon stock value does not give rise to a strong inference of scienter," 47 F.3d at 54 (emphasis added), supports the sufficiency of his scienter allegations. Plaintiff contends that his scienter allegations are "strong" because defendants had actual knowledge of the Hostetter letter and release, and thus his allegations amount to more than mere protection of executive compensation. Plaintiff misunderstands what "more," under *Acito,* is required to allege motive adequately. Here, plaintiff seeks to combine inadequate allegations of motive with inadequate allegations of recklessness, as described *infra,* to demonstrate scienter. Plaintiff offers no support for his approach, and we decline to accept it.[5]

Our prior cases holding scienter allegations to give rise to a strong inference of fraudulent intent illuminate what is necessary. In *Time Warner,* 9 F.3d at 269, we held sufficient plaintiffs' allegations that "defendants were motivated to misrepresent the status of ... alliance negotiations to avoid jeopardizing talks with prospective partners, and to withhold disclosure of consideration of the rights offering to maintain a high stock price prior to announcement of the new rights offering in order to lessen the dilutive effect." In *Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 85 (2d Cir.1999), we held that plaintiff sufficiently pleaded motive where the defendants' misrepresentations were accompanied by insider trading, because "[t]he allegation supports the inference that [defendant] withheld disclosures that would depress his stock until he had profitably sold his shares." Similarly, in *Hollin v. Scholastic Corp. (In re Scholastic Corp.*

---

**5.** To the extent that plaintiff argues that our decision in *Novak,* 216 F.3d at 311, created a third method of demonstrating scienter, we reject such a contention. Instead, what plaintiff contends is a third method, showing that defendants had actual knowledge of facts contradicting their public statements, is part of the second method of demonstrating scienter, by setting forth allegations that demonstrate strong circumstantial evidence of conscious misbehavior or recklessness.

*Securities Litigation)*, 252 F.3d 63, 74–75 (2d Cir.2001), we concluded that plaintiff sufficiently alleged motive where the allegedly fraudulent statements were quickly followed by defendant's sale of 80% of his holdings for a substantial profit.

■ Here, by contrast, plaintiffs have not pointed to any specific benefit that would inure to the defendants that would not be either generalized to all corporate directors or beneficial to all shareholders, not just the defendant directors specifically. Additionally, plaintiff's motive allegations regarding avoidance of personal liability and ensuring Hostetter's ability to obtain that AT & T agreement are too conclusory to support scienter. A plaintiff cannot base securities fraud claims on speculation and conclusory allegations. *Chill*, 101 F.3d at 267. Thus, we affirm the district court's conclusion that Kalnit did not sufficiently allege motive.

### 2. *Circumstantial Evidence of Conscious Misbehavior or Recklessness*

■ Having concluded that Kalnit failed to allege scienter adequately by demonstrating motive and opportunity to defraud, we next turn to whether Kalnit's allegations demonstrate "strong circumstantial evidence" of defendants' "conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128. "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987) (citations omitted), *overruled on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc).

To survive dismissal under the "conscious misbehavior" theory, the appellants must show that they alleged reckless conduct by the appellees, which is "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Honeyman v. Hoyt (In Re Carter–Wallace, Inc. Secs. Litig.)*, 220 F.3d 36, 39 (2d Cir.2000) (citation omitted). Although this is a highly fact-based inquiry, generalities can be drawn.

[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation.

*Novak*, 216 F.3d at 308.

Plaintiff argues that defendants' knowledge of, but failure to disclose, the Hostetter release suffices to show conscious misbehavior or recklessness. He cites to our decision in *Novak*, 216 F.3d at 311–12, for support. In that case, shareholders claimed that defendants had "knowingly and intentionally ... overstated [AnnTaylor, Inc.'s] financial condition by accounting for inventory that they knew to be obsolete and nearly worthless at inflated values and by deliberately failing to adhere to the Company's publicly stated markdown policy." *Novak*, 216 F.3d at 304. We concluded that plaintiffs' scienter allegation was adequate, emphasizing that plaintiffs alleged also that the defendants had, after discussion, made a conscious decision not to mark down inventory specifically because of the effect on AnnTaylor Stores Corporation. *Id.* at 311–12. In making this decision, defendants "knowingly sanctioned procedures that violated

the Company's own markdown policy, as stated in the Company's public filings . . . [and] caused those filings to be materially misleading in that the disclosed policy no longer reflected actual practice." *Id.* at 311.

Plaintiff also relies on our decision in *Rothman*, 220 F.3d at 90–91. In *Rothman*, we found allegations that defendant had, for a full year, failed to expense royalty advances for poorly selling products when the defendant knew (because of quarterly assessments) that these products were selling poorly to be sufficient recklessness allegations. The *Rothman* plaintiffs had pointed to defendants' pleadings in other lawsuits which sought to recover royalty payments as evidence of defendants' knowledge that these products were not selling. *Id.* at 91. We noted that the large size of the eventual write-off taken by defendants "renders less credible the proposition that . . . [defendant] believed it likely that it could recover those royalty advances." *Id.* at 92.

 The nondisclosure allegations here do not rise to the level of recklessness as did those in *Novak* or *Rothman.* In those cases, the defendants' duty to disclose the concealed information was not seriously disputed. Both cases involved a corporation's financial statements and its publicly known accounting policies. Thus, that the *Novak* or *Rothman* defendants were reckless (or consciously misbehaving) in not disclosing their inventory losses was more clear and this failure to disclose amounted to, at the least, reckless behavior. As the district court here pointed out, the duty to disclose the Hostetter letter was not so clear, especially given that the public was aware that MediaOne could accept a superior proposal within forty-five days. *Kalnit I*, 85 F.Supp.2d at 245. Therefore, defendants' recklessness cannot be inferred from the failure to disclose. Further, because plaintiff has failed to demon-

strate that defendants had a motive to defraud the shareholders, he must produce a stronger inference of recklessness. *Beck,* 820 F.2d at 50. This he has not done.

Plaintiff cites two district court cases involving merger negotiations as support. The first, *Buxbaum v. Deutsche Bank, A.G.,* 2000 U.S. Dist. LEXIS 5838, at *42 (S.D.N.Y. March 7, 2000), involved public statements by a chairman of the acquiring bank denying the existence of takeover discussions, where less than a month later, defendants announced a merger. In the interim, the price of the target bank's stock was depressed. Plaintiffs, shareholders who had sold the target bank's stock following defendants' statement, alleged that the merger talks had been going on prior to the public interview and claimed that the statement denying these discussions was false when made. *Id.* at *42–*46. The court found that plaintiffs sufficiently alleged scienter, noting that the facts alleged "clearly suggest that takeover talks were well under way . . . , that [defendant] was personally involved in those talks, and that he falsely and knowingly denied the existence of those talks." *Id.* at *51.

The second case, *In re MCI Worldcom, Inc. Securities Litigation,* 93 F.Supp.2d 276 (E.D.N.Y.2000), involved similar facts. Sellers of the target corporation's shares who sold during the three day period between the date of a misleading statement by defendants (asserting that its registration of an internet domain name matching the name of the target company was not an indication of an intention to acquire the company) and the date of the merger announcement, brought suit alleging securities fraud. *Id.* at 279–80. The court found that the plaintiffs' allegations sufficed to plead conscious misbehavior or recklessness, noting that the statement in controversy had also affirmatively misrep-

resented that the domain name registration was the product of one employee acting alone, but plaintiffs offered a New York Times article indicating that the company itself registered the domain. *Id.* at 285.

These cases are distinguishable from this case. First, both *Buxbaum* and *MCI* involve affirmative misstatements, not merely a failure to disclose merger discussions. There can be no question that a corporation's public statements must be truthful. Here, however, plaintiff's claim lies in non-disclosure. Because, as discussed earlier, this case does not present facts indicating a clear duty to disclose, plaintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior or recklessness. Also, both *Buxbaum* and *MCI* involve misstatements about merger discussions that were ongoing, where the allegations here concern MediaOne's failure to disclose its waiver of a then three year old standstill provision. The recklessness of this behavior is not apparent from the facts alleged by plaintiff. We therefore conclude that plaintiff's allegations are inadequate to demonstrate strong circumstantial evidence of defendants' conscious misbehavior or recklessness.

Plaintiff has failed to allege scienter adequately, through either method. Accordingly, plaintiff's complaint fails to assert a securities fraud claim properly.

## C. *Alternative Grounds for Dismissal*

We agree with the district court's conclusion that plaintiff has failed to plead scienter adequately, and we affirm the district court's dismissal on that ground. We, therefore, need not and do not reach defendants' arguments alleging other deficiencies in the plaintiff's complaint. Specifically, we do not reach whether plaintiff sufficiently pleaded materiality, defendants' duty to disclose, or reliance.

## III. CONCLUSION

For the reasons outlined above, plaintiff has failed to include in his complaint allegations giving rise to a strong inference of fraudulent intent. We therefore affirm the district court's dismissal of plaintiff's complaint.

