**In re: MERCATOR SOFTWARE, INC. SECURITIES LITIGATION**

**No. 3:00CV1610 (GLG).**

United States District Court,
D. Connecticut.

Sept. 13, 2001.

J. Daniel Sararin, Elias A. Alexiades, David A. Slossberg, Hurwitz & Sagarin, Milford, CT, Sanford P. Dumain, Mary L. Calkins, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Jeffrey M. Haber, Mel E. Lifshitz, Joseph R. Seidman, Jr., Bernstein Liebhard & Lifshitz LLP, New York City, Patrick A. Klingman, Schatz & Nobel, Hartford, CT, for Plaintiffs.

Gene S. Winter, St. Onge, Steward, Johnston & Reens, Stamford, CT, William L. Prickett, Kevin J. Cloherty, Alison B. Vreeland, Seth L. Rodner, Dawn M. Perlman, Testa, Hurwitz & Thibeault, Boston, MA, Shaun S. Sullivan, Wiggin & Dana, New Haven, CT, James H. Bicks, David B. Fein, Wiggin & Dana, Stamford, CT, for Defendants.

Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT, Thomas P. Willcutts, Willcutts & Assoc., Hartford, CT, David Kessler, Schiffrin & Barroway, Bala Cynwyd, PA, for Movants.

### *RULING ON MOTION TO DISMISS*

GOETTEL, District Judge.

Defendants have moved to dismiss [Doc. # 26] this consolidated class action securities litigation pursuant to Fed.R.Civ.P. 12(b)(6) because of plaintiffs' failure to plead scienter with particularity, as required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(2), (the "Reform Act"), and Fed. R.Civ.P. 9(b). After hearing oral argument on this motion and after due consideration of the briefs, the Court denies the motion to dismiss.

### *Background*

This consolidated class action securities litigation has been filed on behalf of all persons who purchased or otherwise acquired the common stock of Mercator Software, Inc., on the open market between April 20, 2000 and August 21, 2000. Mercator, which is based in Wilton, Connecticut, is in the business of providing integration software to enable other companies to transform their existing businesses to electronic businesses ("e-businesses"). The named defendants are Mercator, as

well as two individual corporate officers and directors, Constance Galley, the President and Chief Executive Officer ("CEO"), and Ira Gerard, the Vice President of Finance and Administration, Chief Financial Officer ("CFO"), Secretary, and Treasurer of the company, sued in their capacities as controlling persons.

In general, plaintiffs allege that defendants issued to the investing public false and misleading financial statements and press releases concerning Mercator's publicly reported earnings and profitability. They assert that defendants portrayed Mercator as a growing entity with increasing profitability when, in fact, Mercator's financial condition was steadily declining and its earnings per share ("EPS") were dropping sharply. Plaintiffs allege that defendants touted Mercator's unbroken string of growing operating profits and record financial results in order to distinguish Mercator from the multitude of other start-up technology companies looking to capitalize on the e-business phenomenon. However, by April, 2000, they claim that these rosy affirmations did not comport with the company's true financial condition that was steadily declining. In July, 2000, the Company announced disappointing preliminary results for second quarter 2000, but, according to plaintiffs, defendants were still fraudulently concealing the depths to which Mercator's key financial results had sunk.

On August 21, 2000, Mercator issued a press release announcing that it was restating its financial results for the first and second quarters of 2000. In this release, the Company announced dramatically lower earnings for both quarters due to the failure to account for $2.4 million of under-reported expenses. That same day, the Company also filed with the SEC, an amended Form 10–Q for the first quarter ended March 31, 2000, reporting the re-stated financial results, and a Form 10–Q for the second quarter, reporting revised results from the July announcements. For first quarter 2000, the revised figures indicated that the Company's operating income, net income, and earnings per share had been overstated nearly one hundred percent (100%). For the second quarter 2000, the revised figures showed even greater adjustments. Plaintiffs allege that the accounting irregularities in the financial statements violated generally accepted accounting principles ("GAAP"). The Company also announced the termination of Gerard, as well as the resignation of Kevin McKay, who had just been appointed CFO one month earlier. These new disclosures caused Mercator's stock, which is listed on the NASDAQ, to plummet.

As a result of the losses that they sustained, plaintiff-shareholders have asserted claims under § 10(b) and § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

### Discussion

Defendants' motion to dismiss the class action complaint focuses solely on the scienter allegations of the amended complaint. Defendants assert that there are no particularized facts from which to infer that they knew or recklessly disregarded the inaccuracy of any of the financial disclosures at the time they were made. They claim that plaintiffs' allegations are nothing more than mere conjecture. They assert that plaintiffs rely exclusively on Gerard and Galley's senior positions at Mercator from which they infer that these defendants must have known of the unreported expenses. Defendants argue that specific facts are missing from the complaint as to what these defendants knew, the source of their knowledge, and when they acquired this knowledge. They as-

sert that the Private Securities Litigation Reform Act and Fed.R.Civ.P. 9(b) require more.

In ruling on this motion to dismiss, the Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiffs. *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 161 (2d Cir. 2000). Dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The fact that this is a securities fraud case does not change this general standard. *See In re. Carter–Wallace, Inc. Securities Litigation,* 220 F.3d 36, 38 (2d Cir.2000).

To state a cause of action under section 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5, plaintiffs must plead that, in connection with the purchase or sale of securities, the defendants, acting with scienter, made a false statement or omitted a material fact, and that plaintiffs' reliance on defendants' action caused plaintiffs' injury. *In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 264 (2d Cir.1993), *cert. denied,* 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994). The required state of mind or scienter that plaintiff must allege is "an intent to deceive, manipulate or defraud." *Ganino,* 228 F.3d at 168. As to the specificity required for these allegations, we turn to Rule 9(b), Fed.R.Civ.P., and the Private Securities Litigation Reform Act of 1995, also referred to as the "Securities Reform Act," and the law of this Circuit interpreting these requirements.

First, a complaint asserting securities fraud must satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b), which requires fraud to be pled with particularity. *Id.* Rule 9(b), Fed.R.Civ.P., however, also states that "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."

Second, the complaint must meet the requirements of the 1995 Securities Reform Act, which amended the Securities Exchange Act by imposing more stringent pleading requirements on private plaintiffs in an effort to reduce the number of frivolous securities fraud cases being filed. The Securities Reform Act provides in relevant part that

> In any private action under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint *shall,* with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b)(2) (emphasis added).

Prior to the passage of the Securities Reform Act, the Second Circuit had the strongest pleading requirements for scienter amongst the circuits. Following the Act's passage, the Second Circuit has repeatedly interpreted the Act's heightened pleading requirements as echoing the standards previously adopted by the Second Circuit for pleading scienter in securities fraud cases. *See Kalnit v. Eichler,* 264 F.3d 131, 137 (2d Cir.2001); *see also Novak v. Kasaks,* 216 F.3d 300, 310 (2d Cir.) (interpreting the Reform Act as effectively raising the pleading standard to that previously existing in the Second Circuit and no higher), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000); *Press v. Chemical Investment Services Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999) (holding that the Reform Act heightened the re-

quirement for pleading scienter to the level used by the Second Circuit).

■ Accordingly, in the Second Circuit, plaintiffs can plead scienter either (a) by alleging facts demonstrating that the defendants had both the motive and an opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of defendants' conscious misbehavior or recklessness. *See In re Scholastic Corp. Securities Litigation,* 252 F.3d 63, 74 (2d Cir.2001); *Suez Equity Investors, L.P. v. Toronto Dominion Bank,* 250 F.3d 87, 99–100 (2d Cir. 2001); *Ganino,* 228 F.3d at 168–69; *Novak,* 216 F.3d at 306; *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). With both options available to plaintiffs, *see Kalnit,* 264 F.3d at 138; *Novak,* 216 F.3d at 310; *Ganino,* 228 F.3d at 169–70, the Second Circuit is considered by some to now have the most lenient or "plaintiff friendly" pleading requirements among the circuits. *See* David E. Rovella, "Securities Reform Spawns Discord," *The National Law Journal,* July 23, 2001, at A1 & A9; *see also Press,* 166 F.3d at 538 (noting that the Second Circuit has been lenient in allowing scienter issues to withstand summary judgment on fairly tenuous inferences and holding that plaintiff had satisfied the pleading standards where he "barely alleged motive and opportunity").

Accordingly, we review the adequacy of the allegations of plaintiffs' amended complaint under both theories available in the Second Circuit for pleading scienter.

## I. Motive and Opportunity

■ Under the motive/opportunity theory for establishing scienter, plaintiffs point to the fact that significant portions of defendants' overall compensation were closely tied to the economic performance of the Company. (Compl. ¶¶ 82, 83.) As directors and officers of Mercator with access to insider information, the individual defendants clearly had the opportunity to commit fraudulent acts. *See Kalnit,* 264 F.3d at 138; *Scholastic,* 252 F.3d at 74. Thus, the issue is whether plaintiffs have sufficiently pled motive.

■ "Motive is the stimulus that causes a person or entity to act or to fail to act. Such stimulus ordinarily anticipates a concrete benefit defendant would realize by his conduct." *Scholastic,* 252 F.3d at 74. Sufficient motive allegations entail concrete benefits that a defendant could realize as a result of one or more of the false statements and wrongful nondisclosures alleged. *Novak,* 216 F.3d at 307. Motives that are generally possessed by most corporate officers and directors will not suffice. Instead, plaintiffs must assert a concrete and personal benefit to the individual defendant that will result from the fraud. *Id.* at 307–08. Thus, the motive and opportunity elements are generally met when corporate insiders misrepresent material facts to keep stock prices high in order to sell their own shares at a profit. *Id.* The Second Circuit, however, has held that the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation are insufficient motives to establish scienter. *Id.; see also Kalnit,* 264 F.3d at 141; *Shields,* 25 F.3d at 1130; *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995).

In the instant case, the only motives offered by plaintiffs are defendants' desire to have Mercator appear profitable and to increase their own compensation, which they allege was "closely tied" to the Company's economic performance. In keeping with Second Circuit precedent, we hold that these allegations of motive to commit

fraud are insufficient to give rise to a strong inference of fraudulent intent so as to meet the requirements of the Securities Reform Act for pleading scienter.

## II. Recklessness or Conscious Misbehavior

Having concluded that plaintiffs' amended complaint fails to demonstrate motive and opportunity to defraud, we next turn to the question of whether their allegations demonstrate "strong circumstantial evidence" of defendants' "conscious misbehavior or recklessness." "To qualify as reckless conduct, defendants' conduct must have been highly unreasonable and an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Scholastic*, 252 F.3d at 76 (internal citations and quotations omitted). Although this is a highly fact-based inquiry, the Second Circuit has held that where the complaint alleges that defendants had knowledge of facts or access to information contradicting their public statements, recklessness has been adequately pled. *Carter–Wallace*, 220 F.3d at 39; *Novak*, 216 F.3d at 308. "Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." *Novak*, 216 F.3d at 308. "An egregious refusal to see the obvious, or to investigate the doubtful, may ... give rise to an inference of recklessness." *Chill v. General Electric Co.*, 101 F.3d 263, 269 (2d Cir.1996) (internal citations and quotations omitted). Additionally, courts have found allegations of recklessness to be sufficient where plaintiff alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor or ignored obvious signs of fraud. *Novak*, 216 F.3d at 308. On the other hand, the Second Circuit has refused

to allow plaintiffs to plead "fraud by hindsight." *Novak*, 216 F.3d at 309 (citing *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir.1999)). Thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they did were held insufficient to make out a claim of securities fraud. *See Acito*, 47 F.3d at 53. Additionally, allegations of GAAP violations or accounting irregularities, standing alone without additional allegations of corresponding fraudulent intent, have been held insufficient to state a securities fraud claim. *See Stevelman*, 174 F.3d at 84.

In this case, plaintiffs allege generally that defendants acted with scienter in that each defendant had actual knowledge of the misrepresentations and the omission of material facts, knew that the publicly disseminated documents were false and misleading and knew that they would be issued to the investing public who would rely upon them, *or* that each defendant acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts as would have revealed the materially false and misleading nature of the statements and omissions. (Compl.¶ 68.) More specifically, plaintiffs state that Galley, as President and CEO of Mercator, and Gerard, as Vice President of Finance and Administration and CFO, were directly privy to and in control of the fraudulent financial statements, and point to the "sheer magnitude of the restatement" (¶ 69); the "very nature of the types of expenses that were ultimately restated and/or revised," (¶ 70); a former employee's statement that he overheard Gerard on four or five occasions in April and May stating that "it doesn't look good" with regard to reporting earnings (¶ 71); a dramatic increase in the number of closed door meetings in the Controller's Office, often involving Gerard (¶ 71); the sudden and unannounced outsourcing of the Telemarketing Depart-

ment, which plaintiffs claim was an unusual corporate restructuring, designed to hide financial problems from company employees and to conceal the under-reporting of sales expenses (¶ 72); defendants' awareness that many of the expenses were either fixed or were recurring, normal operating expenses, tied directly to sales and, thus, where there was a dramatic increase in late quarter revenues, there should have been an attendant increase in expenses (¶¶ 74–78); the magnitude of the restatement and revisions (operating income was overstated by 92% in first quarter and by 168% in second quarter; pro forma net income was overstated by 83% in first quarter and by 139% in second quarter; and EPS was overstated by 100% in first quarter and by 100% in the second quarter) (¶¶ 79, 80); the timing of Gerard's firing by the company and CFO McKay's resignation on the same day that Mercator announced the restatement and revision of its financial statements (¶ 81).

Here, there is no dispute that misstatements were made, which significantly affected the Company's profits. There also can be no dispute that defendants had a duty to exercise a certain level of care when making financial disclosures. These were not disclosures concerning future performance. These were statements about past performance concerning expenses as to which senior corporate management allegedly had records available and about which they had knowledge or should have had knowledge by virtue of the type of expenses, the fact that they were recurring expenses, and that they were directly tied to profits. *See Rothman v. Gregor,* 220 F.3d 81, 90 (2d Cir. 2000) (finding that plaintiffs had sufficiently alleged scienter based not upon the company's overly optimistic predictions of sales, but rather on its failure to expense royalty advances *after* poor sales were known). Additionally, based upon plaintiffs' figures, these were misstatements of a magnitude of nearly one hundred percent (100%) or more. As defendants point out, the degree of the misstatement is considerably less when viewed from the standpoint of expenses rather than from a profits standpoint. Nevertheless, it could reasonably be inferred that senior management would have well been aware of the fact that a slight change in expenses could have a dramatic impact on profits. Moreover, this is not a case that just involves GAAP violations.

Plaintiffs also cite to Gerard's statements that "things don't look good," and argue that one can reasonably infer that this statement related to financial matters since it was made at a time when there were numerous closed door meetings and a number of internal changes were taking place. Additionally, Gerard was fired and the new CFO resigned on the same day that the Company announced that it was filing restatements of its first quarter reports, from which one could deduce that the company had been having financial difficulties for some time.

The Court finds that, when the allegations of the amended complaint, which we accept as true for purposes of this motion, are read in their totality, plaintiffs have alleged sufficient facts from which a reasonable jury could find reckless conduct on the part of the defendants. This is sufficient to meet the pleading standards for scienter in the Second Circuit. *See Novak,* 216 F.3d at 308; *Rothman,* 220 F.3d at 90–91; *Carter–Wallace,* 220 F.3d at 39; *Scholastic,* 252 F.3d at 76–77.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [**Doc. # 26**] is DENIED.