David **CHLECK** and Edmund Carnevale, Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY,** Defendant.

No. 03 Civ. 2278(JSR).

United States District Court, S.D. New York.

Oct. 20, 2003.

Jeffrey S. Boxer, William F. Sondericker, Esq., Carter, Ledyard & Milburn, New York City, for Plaintiffs.

Anthony C. Walsh, General Electric Company, Atlanta, GA, Fred Davis, Esq., Sherman & Sterling, New York City, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Confirming the Court's telephonic rulings of July 16, 2003, defendant's motion to dismiss the Complaint is granted in part and denied in part, as follows: Counts 1 and 2 of the Complaint are dismissed with prejudice; Count 3 is stayed with direction that all but the portion of the claim dealing with accounts receivable be submitted to the designated Accounting Referee; and Count 4 is dismissed as moot for failure to state a separate cause of action.

According to the allegations of the Complaint (taken, for the purposes of this motion, most favorably to plaintiffs), plaintiffs are two individuals who in April 2002 contracted to sell their company, Panametrics, Inc., to defendant General Electric Company for $220 million. The contract of sale provided that $17 million of the purchase price would be held in escrow pending a post-closing accounting and that any disagreements between the parties concerning such accounting would be submitted to an "Accounting Referee" who was "internationally recognized" and "reasonably satisfactory" to both sides. *See* Stock Purchase Agreement dated April 17, 2002 (the "Agreement"), at § 2.08(c).

As it happened, the post-closing accounting was hotly contested by both sides. But rather than submit their disputes to an Accounting Referee, plaintiffs filed suit in this Court, alleging securities fraud (Count 1), fraud in the inducement under New York State law (Count 2), breach of contract (Count 3), and right to declaratory relief (Count 4).

Conclusory allegations aside, the two fraud counts (Counts 1 and 2) are premised on the claim that General Electric intended to misuse the post-closing escrow and accounting arrangements as a device to artificially reduce the purchase price. In support of this claim, only two relevant facts are pleaded with even arguable particularity:

First, the Complaint alleges that certain statements evidencing the scheme were made by a General Electric executive named David Tucker to certain other General Electric executives in September or October of 2002 (several months after the Agreement between the parties had been consummated), as follows:

As part of his presentation to the General Electric executives, Mr. Tucker stated that General Electric's standard operating procedure when purchasing companies is to ensure that it reclaims a considerable part of the purchase price rather than paying the full amount to the sellers. Mr. Tucker stated that "the closing price is never the final price." According to Mr. Tucker, one way General Electric does this is to put a significant part of the purchase price into escrow and to then manufacture reasons why General Electric should not have to pay the amount held in escrow. General Electric's policy, according to Mr. Tucker, is to construct a way "to always get the escrow back."

Complaint ¶ 36. While the face of the Complaint suggests that these allegations are made on personal knowledge, it became clear during oral argument of the instant motion that this is not the case. *See* transcript, 7/9/2003, at 10, 12.

Second (and with even less particularity), the Complaint alleges that General Electric intended to jeopardize the dispute resolution mechanism by separately retaining every "internationally recognized" ac-

counting firm qualified to act as Accounting Referee, thus creating irreconcilable conflicts. Complaint ¶ 41. *See also* Memorandum of Law of David Chleck and Edmund Carnevale in Opposition to General Electric Company's Motion to Dismiss dated June 23, 2003 ("Pl.Mem.") at 5. Again, it became clear at oral argument that this allegation rested, at best, on information and belief. *See* transcript, 7/9/2003, at 23.

■ Based on the aforementioned allegations, the Complaint further alleges, in effect, that defendant never intended to carry out the post-closing accounting in good faith and defrauded plaintiffs by failing to declare this intention at the outset. However, as plaintiffs' own counsel expressly conceded at oral argument, this is insufficient to state a claim for fraudulent inducement under New York law (Count 2), because under that law, "There's no doubt … that one cannot convert a breach of contract claim into a fraud claim simply by saying the defendant had no intent to perform the contract." Transcript, 7/9/2003, at 16. *See, e.g., JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F.Supp.2d 24, 26 (S.D.N.Y.2002)(under New York law, "a claim for breach of contract cannot be converted into a fraud claim by simply alleging that the promisor intended not to perform its promise"); *Papa's–June Music v. McLean*, 921 F.Supp. 1154, 1160–61 (S.D.N.Y.1996)(same).

It is true that plaintiffs' counsel, following the above-quoted concession, argued that this case was different because what was here being alleged was not simply an intention not to perform the post-closing accounting in good faith but rather a regular, if undisclosed, "policy and practice" of General Electric to misuse the escrow and referee provisions to avoid paying the previously agreed-upon purchase price. *See* Transcript, 7/9/2003, at 16; *see also* Pl.

Mem. at 17. But plaintiffs' counsel eventually conceded that this was a distinction without a difference:

> THE COURT: The question I raised is, given the doctrine of New York law, that a mere allegation that a promisor intend[ed] not to perform, intended from the outset not to perform some aspect of a contract is not sufficient to state a claim for fraud, what are the facts that make this case fall within the exceptions to that general rule?..
>
> MR. SONDERICKER [plaintiffs' counsel]: Well, I think what the complaint alleges is that GE had a custom and policy of never paying, always not wanting to pay the full price.
>
> THE COURT: That's the same as saying that they never intended, the promisor never intended to perform its part of the—
>
> MR. SONDERICKER: Exactly.

Transcript, 7/9/2003, at 20. In other words, the plaintiffs' claim still reduces to an undisclosed intention not to perform in good faith, which is insufficient to state a claim for fraudulent inducement under New York law.

Nor can this defect be remedied in this case by leave to replead. Indeed, when pressed at oral argument, plaintiffs' counsel could not identify any facts, whether alleged in the Complaint or otherwise, that might bring this case outside the scope of the aforementioned doctrine of New York law. *See* transcript, 7/9/2003, at 14–20. Accordingly, Count 2 of the Complaint must be dismissed with prejudice.

■ While the same defect might not bar the claim for securities fraud (Count 1), *see Ouaknine v. MacFarlane*, 897 F.2d 75, 80–81 (2d Cir.1990), such a claim must be pleaded in accordance with the mandates of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b)(2),

which requires, *inter alia,* that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," that is, with fraudulent intent. Although this requirement can be satisfied either by adequately particularized allegations of motive and opportunity or by specific allegations circumstantially raising a strong inference of conscious misbehavior, *see Kalnit v. Eichler,* 264 F.3d 131, 138–39 (2d Cir.2001); *In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 74 (2d Cir.2001); *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000), here there is neither. Regarding motive and opportunity, the alleged motive—to reduce defendant's purchase price—is equally consistent with good and bad intentions and is thus not the kind of motive that suffices for these purposes. *See, e.g., Kalnit v. Eichler,* 264 F.3d at 140. Regarding strong circumstantial evidence of conscious misbehavior, the Complaint is largely devoid of specified particulars, and, as noted above, those few that are alleged are, it turns out, merely alleged on information and belief from unspecified sources, itself insufficient under Reform Act pleading. *Novak v. Kasaks,* 216 F.3d at 312.

At best, moreover, the practice allegedly recited by Mr. Tucker does not itself state a cognizable fraud, at least as between sophisticated parties, since defendant's desire to misuse the escrow procedure could only succeed if the independent accounting referee were to agree with defendant's accounting positions. But there is no suggestion that the Accounting Referee himself is to be defrauded. Nor does it cure this problem to allege that part of General Electric's plan is to "conflict-out" any otherwise appropriate referee, for someone would still have to accept General Electric's allegedly "manufactured" accounting before any fraud could be accomplished. Morever, the Complaint does not allege a single particular to evidence the allegation

that General Electric was intentionally conflicting out all accountants who could otherwise serve as Accounting Referee, and it became obvious at oral argument that plaintiffs could not repair this deficiency. *See* transcript, 7/9/2003, at 23. (Though not strictly germane to this decision, it may also be noted that, subsequent to receiving the Court's oral rulings on the instant motion, the parties reached agreement on the appointment of the internationally recognized accounting firm of PriceWaterhouseCoopers as the accounting referee in this case. *See* letter from plaintiffs' counsel to the Court dated October 16, 2003.)

Accordingly, because the allegations of the Complaint are insufficient to meet the requirements for pleading securities fraud and because there is no likelihood of rectifying these deficiencies, Count 1 must also be dismissed with prejudice.

Next, Count 3, which seeks damages for breach of contract, must be stayed and all but the portion that demands remittance of accounts receivable must be referred to the Accounting Referee. Under the Agreement, the parties expressly agreed to submit all disputes over post-closing accounting to the Accounting Referee, and plaintiffs cannot escape this term of the Agreement simply by alleging that defendant breached the contract in bad faith. *See, e.g., Talegen Holdings, Inc. v. Fremont Gen. Corp.* No. 98 Civ. 0366, 1998 WL 513066, at *4 (S.D.N.Y. Aug. 19, 1998). Only the accounts receivable portion of the claim, which does not relate to post-closing adjustments, is properly before this Court; but the parties have agreed to try to resolve this aspect among themselves while the rest of the claim is before the Accounting Referee. *See* letter from plaintiffs' counsel to the Court dated October 16, 2003.

Finally, Count 4 seeks a declaration that defendant, "in accordance with the terms of the Agreement," must turn over to plaintiffs the amounts held in escrow. Complaint ¶ 103. This is not a proper request for declaratory relief but simply another way of demanding damages for breach of contract. Accordingly, Count 4 must be dismissed as moot for failing to state a separate cause of action.

For the aforementioned reasons, Counts 1 and 2 of the Complaint are dismissed with prejudice(and therefore without leave to replead), Count 4 is dismissed as moot, and Count 3 is stayed with direction that all but the portion of the claim demanding remittance of accounts receivable be submitted to the agreed-upon Accounting Referee for resolution.

SO ORDERED.