HEALTHCARE FINANCE GROUP,
INC., Plaintiff,

v.

BANK LEUMI USA, Defendant.

No. 08 Civ. 11260(VM).

United States District Court,
S.D. New York.

Oct. 26, 2009.

James Vincent Masella, III, Blank Rome LLP, New York, NY, for Plaintiff.

Mark Hanchet, Mayer Brown LLP, Washington, DC, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Healthcare Finance Group, Inc. ("HFG") brought this action against defendant Bank Leumi USA ("Bank Leumi"), asserting claims of securities fraud pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("§ 10(b)") and Securities and Exchange Commission Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 ("Rule 10b–5"); common law fraud; and common law negligent misrepresentation. These claims stem from HFG's purchase of auction rate securities. HFG filed the initial complaint on December 24, 2008 ("Initial Complaint"). Bank Leumi filed a motion to dismiss the Initial Complaint on February 3, 2009. The Court ordered HFG to submit a proposed amended complaint remedying the deficiencies highlighted by Bank Leumi in its motion to dismiss. HFG filed the amended complaint on March 6, 2009 (the "Amended Complaint").

Bank Leumi now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND[1]

### A. FACTUAL BACKGROUND

#### 1. Auction Rate Securities

The Amended Complaint describes auction rate securities as "either municipal or

---

1. The facts below are taken from the Amended Complaint and the documents attached to it or incorporated by reference. *See Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156–57 (2d Cir.2006). Except where specifically referenced, no further citation to these sources will be made.

corporate debt securities with a long-term nominal maturity date for which the interest rate is regularly reset at periodic predetermined Dutch-style auctions which occur typically every 7, 14, 28 or 35 days. Interest is paid at the end of the auction period." (Amended Complaint ¶ 15.) In these auctions, buyers specify the number of shares they want and the lowest interest rate that they would be willing to accept. The lowest rate at which all of the securities can be sold is set as the clearing rate, which is then applied to all of the bids at that rate or lower.

If there are not enough bids to cover all of the securities being offered at an auction, the auction fails and no securities can be sold at that auction. Current shareholders would then receive the maximum rate as the return on their investment. The maximum rate is the highest rate that the issuer of the auction rate security is willing to pay.

The Amended Complaint states that "[u]ntil recently, major underwriter/broker-dealers placed support bids or bids of last resort, which prevented the auctions from failing." (*Id.* ¶ 21.) Once an auction for auction rate securities fails, subsequent auctions usually continue to fail such that existing holders of that particular auction rate security cannot liquidate their investments in that security.

### 2. *HFG's Purchase of Auction Rate Securities*

In September 2006, HFG agreed to deposit $1 million with Bank Leumi, in connection with a "letter of credit line." (*Id.* ¶ 24.) HFG indicated that it wanted to receive interest or a return on its deposit comparable to the return HFG could receive from other financial institutions. An employee of Bank Leumi advised HFG to place its money in auction rate securities, which were represented to be practically the same as cash or an investment in a money market fund with a somewhat higher return. HFG was also told that it could request and receive the value of its investment at any time. HFG then authorized Bank Leumi to place its $1 million deposit into auction rate securities.

On or about February 2, 2008, Bank Leumi advised HFG to liquidate certain bonds and place the proceeds in auction rate securities issued by Jefferson County, Alabama. HFG accepted the recommendation and directed Bank Leumi to invest the entire balance of its account, approximately $1.025 million, in Jefferson County auction rate securities.

HFG alleges that in August 2007, "at least 96 auction rate securities auctions failed, leaving institutional and corporate investors stuck with nearly $9 billion of illiquid securities." (*Id.* ¶ 34.) Additional auction failures occurred in late 2007, and 87% of the auctions held on February 13, 2008 failed, "when all of the major underwriter/broker-dealers refused to continue to support the auctions, resulting in the collapse of the auction rate securities market." (*Id.* ¶ 36.) The March 5, 2008 auction for Jefferson County's auction rate securities failed, as have all successive auctions for those securities. In September 2008, Jefferson County defaulted on obligations to pay the principal on all of its bonds, and the market for Jefferson County securities "effectively no longer exists." (*Id.* ¶ 48.)

Bank Leumi has refused all requests from HFG for a return of the $1.025 million that was invested in the Jefferson County auction rate securities. HFG alleges that Bank Leumi is profiting from "its involvement with the auction rate securities market," and that it has benefitted by "among other things, not being forced to carry the illiquid Jefferson County securities on its balance sheet." (*Id.* ¶ 53.)

### 3. Alleged Misrepresentations and Omissions

HFG alleges that Bank Leumi made the following misrepresentations and omissions in connection with HFG's decision to invest in auction rate securities: (1) assuring HFG that "Jefferson County securities were virtually the same as cash or money market funds and highly liquid, safe, short-term investment vehicles suitable for its objectives"; (2) "stating that HFG could request and receive the return of its money at any time"; (3) "neglecting to provide basic information about auction rate securities, including the fact that auctions were historically supported by underwriter/broker-dealers who placed last minute support bids in order to prevent auction failure"; (4) "neglecting to provide [HFG] with a prospectus or other offering documents for any auction rate securities, including the Jefferson County securities"; (5) "omitting to disclose ... the fact that a significant amount of auctions began to fail starting in August 2007 and that the auction rate securities market was no longer as safe as Bank Leumi initially represented"; and (6) "omitting to disclose ... that the Jefferson County securities did not fit the parameters of HFG's investment profile because of credit issues that resulted in an inability for these securities to be converted to cash if HFG so wanted." (*Id.* ¶¶ 58, 65, 73.) The Amended Complaint asserts that the alleged misrepresentations and omissions were made "knowingly, deliberately, and recklessly, and for the purpose and effect of concealing the truth about the liquidity of and risks associated with auction rate securities and supporting the market for these securities." (*Id.* ¶¶ 59, 66.)

### B. MOTION TO DISMISS

The Amended Complaint asserts claims for: (1) violation of § 10(b) and Rule 10b–5; (2) common law fraud; and (3) negligent misrepresentation. Bank Leumi now moves to dismiss the Amended Complaint, arguing that (1) HFG cannot show the requisite loss causation, reasonable reliance, actionable misrepresentations, or scienter to sustain the § 10(b) claim; (2) HFG has not pleaded the common law fraud claim with particularity; and (3) the negligent misrepresentation claim is barred by New York's blue sky law, known as the Martin Act.

## II. DISCUSSION

### A. LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal,* 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.

### 1. *Claim Under § 10(b) and Rule 10b-5*

■ To adequately state a cause of action for securities fraud under § 10(b) and Rule 10b–5, a plaintiff must assert facts showing that the defendant "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which [the] plaintiff[ ] relied; and (5) that [the plaintiff's] reliance was the proximate cause of [the] injury." *Lentell v. Merrill Lynch & Co. Inc.,* 396 F.3d 161, 172 (2d Cir.2005). Securities fraud actions are also subject to the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737, as well as those of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See Kalnit v. Eichler,* 264 F.3d 131, 138 (2d Cir.2001); *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000). A plaintiff in a securities fraud action must also allege economic loss and loss causation. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).

■ The element of reliance is often described as transaction causation, *see Dura Pharms.,* 544 U.S. at 342, 125 S.Ct. 1627, and "[i]t is long settled that a securities-fraud plaintiff must prove both transaction and loss causation," *Lentell,* 396 F.3d at 172 (internal quotation marks and citation omitted); *see also* 15 U.S.C. § 78u–4(b)(4). Transaction causation "requires only an allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Lentell,* 396 F.3d at 172 (internal quotation marks and citation omitted).

■ "Loss causation, by contrast, is the proximate causal link between the alleged misconduct and the plaintiff's economic harm." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 106 (2d Cir.2007). "[T]o establish loss causation, a plaintiff must allege ... that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Lentell,* 396 F.3d at 173 (internal quotation marks and citation omitted) (emphasis in original). It is not enough for a plaintiff to allege that the price of a security was inflated because of a misrepresentation; there must be a causal connection between the economic loss and the alleged misrepresentation. *See Dura Pharms.,* 544 U.S. at 346–47, 125 S.Ct. 1627. "[T]he plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *ATSI Commc'ns,* 493 F.3d at 107.

### 2. *Common Law Fraud*

■ The elements of common law fraud under New York law are: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." *Dover Ltd. v. A.B. Watley, Inc.,* 423 F.Supp.2d 303, 327 (S.D.N.Y.2006) (citations omitted). Claims of common law fraud must satisfy the requirements of Rule 9(b). *See Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 274 (S.D.N.Y. 2006).

### 3. *Negligent Misrepresentation*

█ The elements for a negligent misrepresentation claim under New York law are that

(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir.2000).

### B. *DISCUSSION*

#### 1. *Section 10(b) and Rule 10b–5 Claim*

█ HFG fails to state a claim under § 10(b) because HFG cannot establish the required element of loss causation. Loss causation is "a causal connection between the [alleged] material misrepresentation and the loss." *Dura Pharms.*, 544 U.S. at 342, 125 S.Ct. 1627 (*quoting* 15 U.S.C. § 78u–4(b)(4)). HFG must allege "that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered," *Lentell*, 396 F.3d at 173 (internal quotation marks and citation omitted) (emphasis in original), that is, "that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *ATSI Commc'ns*, 493 F.3d at 107.

HFG alleges misrepresentations and omissions about: the basic features of auction rate securities; the ease of accessing funds invested in auction rate securities; the failure of auctions beginning in August 2007; and the difficulty of converting Jefferson County securities into cash. HFG also claims that Bank Leumi should have provided HFG with a prospectus or other offering documents for the auction rate securities.

HFG has therefore failed to allege that the purported misrepresentations and omissions caused the loss complained of here. Although HFG has sufficiently alleged transaction causation by asserting that it would not have purchased the auction rate securities in question "but for the claimed misrepresentations or omissions," *Lentell*, 396 F.3d at 172 (internal quotation marks and citations omitted), HFG has not alleged that the misrepresentations or omissions caused the failure of the auctions for Jefferson County auction rate securities that has rendered HFG unable to access its investment.

HFG does not plausibly allege that the "materialization of the risk[s] concealed by the fraudulent statement[s]" caused the failure of the auctions; rather, as described in the Amended Complaint, the failure of the Jefferson County auctions occurred "because of both market issues and a default by the underlying issuer." (Amended Complaint ¶ 23.) The Amended Complaint states that "the collapse in the auction rate securities market" resulted when "all of the major underwriter/broker-dealers refused to continue to support auctions." (*Id.* ¶ 36.) HFG thus has not alleged "that the *subject* [s] of the fraudulent statement[s] or omission[s] [were] the cause of the actual loss suffered," *Lentell*, 396 F.3d at 173 (internal quotation marks and citation omitted) (emphasis in original).

Even if HFG had alleged that the Jefferson County auction rate securities were not worth the price HFG paid for them because of the facts that Bank Leumi allegedly failed to disclose or misrepresented, HFG would still need to show some causal connection between the alleged misrepresentations and omissions and the loss. As the Supreme Court observed in

*Dura Pharmaceuticals,* a fall in the value of a security

> may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.

544 U.S. at 342–43, 125 S.Ct. 1627. HFG has not plausibly alleged that the collapse of the auction rate securities market and the market for Jefferson County securities was caused by the revelation of the information that Bank Leumi had allegedly misrepresented or suppressed. HFG has therefore failed to allege the required element of loss causation. The motion to dismiss the § 10(b) and Rule 10b–5 claim is granted.

### 2. State Law Claims

■ This Court has jurisdiction over HFG's state law fraud and negligent misrepresentation claims only through an exercise of supplemental jurisdiction. A district court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, the exercise of supplemental jurisdiction is within the discretion of the district court, which "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006). The district court must weigh "the traditional 'values of judicial economy, convenience, fairness, and comity' ... in deciding whether to exercise jurisdiction." *Kolari,* 455 F.3d at 122 (*quoting Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Id.* (*quoting Cohill,* 484 U.S. at 350 n. 7, 108 S.Ct. 614).

Because the Court is dismissing HFG's federal claim, the Court finds that the values of judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over the remaining state law claims. The Court therefore dismisses the claims for fraud and negligent misrepresentation without prejudice.

### C. *NO LEAVE TO AMEND*

■ The Court will not grant a request from HFG for leave to amend the Amended Complaint. Although a court "should freely give leave" to amend "when justice so requires," Fed.R.Civ.P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (citations omitted). HFG has already had one opportunity to amend its complaint. In addition, the Amended Complaint fails to allege loss causation, and HFG could remedy this deficiency only by alleging a completely different set of misrepresentations and omissions. Such allegations would effectively constitute filing an entirely new action, rather than an amendment of the complaint in the case at hand. Accordingly, the Court will not grant leave to amend.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 12) of defendant Bank Leumi USA to dismiss the first amended complaint is GRANTED. The dismissal of the federal securities fraud claim is with prejudice; the dismissal of the state law claims for fraud and negligent misrepresentation is without prejudice. The Court will not grant any request by plaintiff Healthcare Finance Group, Inc. for leave to amend.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**